MICHAEL J. TREZZA, ESQUIRE
State Bar No. 142922
BERTRAND F. ITHURBURN, ESQUIRE
State Bar No. 113031
TREZZA, ITHURBURN,
STEIDLMAYER & ITHURBURN
A Professional Corporation
506 Second Street
Yuba City, CA 95991
Telephone: (530) 673-5637

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

\* \* \*

| | |
|---|---|
| LISA POLONSKY-BRITT,<br><br>      Plaintiff,<br><br>vs.<br><br>YUBA CITY UNIFIED SCHOOL DISTRICT, ANGELA HUERTA, BRIAN ACURI, CRAIG GUENSLER, ELIZABETH ENGLEKEN, AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>      Defendants. | CASE NO. 10-1582<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

Plaintiff is informed and believes and thereby complains and alleges as follows:

**I. JURISDICTION, VENUE AND THE PARTIES**

1. Plaintiff, LISA POLONSKY-BRITT (hereinafter "plaintiff"), is a citizen of the United States, residing in the County of Sutter, in the State of California.

2. Defendant, YUBA CITY UNIFIED SCHOOL DISTRICT (hereinafter "YCUSD") is a recipient of Federal funds subject to Section 504 of the Rehabilitation Act, and a governmental entity authorized under the laws of the State of California.

3. Defendant, ANGELA HUERTA, is and was at all relevant times mentioned herein employed by YCUSD as a principal at April Lane Elementary School, and was plaintiff's immediate supervisor.

4. Defendant, BRIAN ARCURI (hereinafter "Arcuri") is employed by the YCUSD and was at all relevant times mentioned herein the Vice-Principal at April Lane Elementary School.

5. Defendant, CRAIG GUENSLER (hereinafter "Guensler") was at all relevant times mentioned herein employed by the YCUSD as Assistant Superintendent of Human Resources.

6. Defendant, ELIZABETH ENGLEKEN (hereinafter "Engleken") is employed by the YCUSD and was at all relevant times the Director of Student Support Services.

7. Plaintiff is informed and believes and alleges that at all relevant times, all defendants were the agents, employees, and/or servants, masters or employee of the remaining defendants, and in doing the things hereinafter alleged, were acting within the course and scope of such agency or employment, and in company with each and every defendants, and with the approval and ratification of each of the other defendants.

8. The true names and capacities, whether individual or otherwise, of Does 1 through 10, inclusive, are unknown to the plaintiff who therefore sues Does 1 through 10 by fictitious names. Plaintiff will amend her complaint to show their names and capacities when they have been ascertained.

9. The jurisdiction of the Court over the subject matter of this action is predicted upon 28 U.S.C. Section 1331.

10. Venue is appropriate in this judicial district under 28 U.S.C. Section 1391(b) because defendant, YCUSD is located here, and all other defendants reside within this judicial district, and the events giving rise to this complaint occurred within the district.

## II. FACTUAL ALLEGATIONS

11. Plaintiff was hired by YCUSD approximately 15 years ago as an elementary school teacher. She worked one year as an elementary school teacher, then received special education training and has taught the last 14 years as a special education teacher.

12. During her tenure as a special education teacher plaintiff has performed her job in a professional and competent manner, has received regular or annual salary and benefit increases and excellent performance evaluations. She has never been disciplined for any alleged failure to perform her job competently and professionally, nor has she or defendant YCUSD ever received a complaint concerning plaintiff's performance from a parent or guardian of any of the students she teaches.

13. Between 2000 and 2008, Plaintiff taught as a special education teacher at April Lane Elementary School. In approximately 2005, defendant Huerta became principal at April Lane and plaintiff's immediate supervisor.

14. In approximately March, 2008, Huerta held a staff meeting during which she expressed a desire to incorporate Character education in the school curriculum. The Character education was to be based, in part on a program called "Character Counts" a Christian faith based program. Plaintiff, who is Jewish, expressed concern about this particular program insofar as it might violate Federal and State laws regarding separation of church and state by requiring district resources, i.e., teachers, to implement the program. Defendant Huerta stated that she needed the entire faculty to be "on board" with the program. Following the staff meeting, plaintiff was called into the principal's office and asked whether she had "a problem" with Character Education.

15. In October, 2008, flyers were distributed to teachers to be sent home with students describing an event hosted by a local Christian Church for a children's fall festival, with

information on admission prices.  The festival had a Christian message and those attending were invited to pray at the conclusion of the performance.

A parent of a child at April Lane expressed concern to plaintiff about the flyer being sent home and plaintiff directed the parent to Huerta.  The parent, unable to contact Huerta, complained to YCUSD's district office.  Subsequently, Huerta called the parent at home demanding to know if the parent had been "speaking to Mrs. Britt" about the flyer.  The parent communicated this to plaintiff who e-mailed the parent, Huerta, and Guensler at the district office.  Guensler called a meeting with plaintiff during which he dismissed her concerns, and suggested she move to another school campus.

16. On or about October 31, 2008, plaintiff was called into Huerta's office and for approximately 1 hour verbally reprimanded her for sending the e-mail.  She subsequently was observed by Huerta and Helen Gomez, the "literacy coach" at April Lane, and a peer of plaintiff's for approximately 30 minutes while teaching her classes.  She was informed by other teachers that while they had been observed by Huerta or other administrators, such observances lasted 5-7 minutes.  In addition, the other teachers received feedback from Huerta regarding her observations, but plaintiff received none. Shortly after the observation, plaintiff inadvertently received an email from Helen Gomez, that was meant for Huerta.  The email was extremely negative in its portrayal of plaintiff, and suggested that Huerta and Gomez viewed plaintiff in this negative light.  Subsequent to the incident involving the parent and the flyer Huerta began frequently visiting plaintiff's classroom questioning plaintiff and her aide as to her schedule and whereabouts.

17. Plaintiff attempted to speak with Huerta regarding the email intended for Huerta, but inadvertently sent to plaintiff, but Huerta refused.  Plaintiff then contacted the Yuba Sutter Teachers Association to seek mediation, but Ms. Gomez, who prepared and sent the hostile email refused. Plaintiff sought intervention from YCUSD district office, but to no avail.

18. On January 20, 2009, attorneys for the California Teachers Association Group Legal Services, wrote to YCUSD alleging the district infringed on Mrs. Britt's religious liberty and was using public funds to teach religious doctrine, in violation of the California Constitution. In addition, the letter alleged the YCUSD had and was continuing to retaliate against plaintiff for opposing such practices. On February 17, 2009, attorneys for YCUSD responded denying the allegations.

19. On March 19, 2009, an email was sent to staff from Ms. Gomez concerning a training for teachers on dealing with students with special needs. A "panel of experts" to advise teachers was chosen by defendant Huerta and Ms. Gomez. The panel consisted of three employees who worked at April Lane part time, and only one, a psychologist, had any expertise in the topic to be addressed. Nearly all of the children were students of plaintiff, who worked full-time (daily) yet she was excluded from the panel.

20. On March 25, 2009, plaintiff was verbally assaulted by a teacher, Mr. Bagely, who was a strong proponent of the "Character Courts" program and very outspoken about his born-again Christian beliefs. Neither Huerta or Arcuri intervened on plaintiff's behalf.

21. On April 3, 2009, Mr. Arcuri ordered modified assessments of special education students without consulting plaintiff. Waivers were required from parents which were not obtained. Arcuri asked plaintiff to get parental waivers – which she refused because it was after the fact and against the law. During a discussion with Arcuri he became angry and hostile and said "so you think Angela and I are the enemy?"

22. On April 28, 2009, a staff meeting was scheduled that had nothing to do with special education. Plaintiff requested to be excused so she could perform/prepare for IEP's. Huerta refused.

23. On May 28, 2009, approximately one week before the end of the 2008-2009 school year, the YCUSD falsely informed plaintiff that reduced enrollment of special education

students warranted a reduction in service from 100% to 80%, and suggested she move to another school in 2009-1010 school year. As a result, plaintiff ultimately moved to another school site rather than lose full-time employment.

24. The only available school offered to plaintiff was King Avenue Elementary School, whose principal, Tom Walters, was hostile towards plaintiff, and previously had asked her "how does it feel to be an anarchist." Primarily out of economic reasons, plaintiff moved to King Avenue.

25. Plaintiff's concerns about Mr. Walters were well founded as he was hostile to her before school even began. He refused to provide her a room key, forcing her to seek out a custodian and only be able to prepare her classroom when custodians were present. Mr. Walters refused to respond to plaintiff's request for any help at all, and remained hostile until plaintiff was compelled to take a leave for medical reasons caused by Mr. Walter's hostility and YCUSD's refusal to intervene.

26. Plaintiff took a medical/work-related leave of absence for several months in late 2009 – early 2010. During this period YCUSD continued its retaliation and discrimination against plaintiff by "attempting to accommodate" her by offering relocation to other school sites, namely, St. Isidore's and Faith Christian, both religious schools. This despite YCUSD's knowledge of plaintiff's outspoken opposition to the district's reported entanglement with religion, as set forth in Paragraphs 14 through 20 herein.

### III. CAUSES OF ACTION

**FIRST CLAIM FOR DEPRIVATION OF CONSTITUTIONAL RIGHTS UNDER COLOR OF STATE LAW; 42 USC SECTION 1983**

27. The allegations set forth in Paragraphs 1 through 26 above are re-alleged and incorporated herein by reference.

28. The actions of defendants, YCUSD, HUERTA, ACURI, GUENSLER, and ENGELKEN were done under color of State law.

29. Plaintiff, who is Jewish, confronted defendants over the involvement of YCUSD in promoting Christian-based religious materials, assemblies, and other use of YCUSD resources which plaintiff believed constituted an improper and unconstitutional entanglement of government and religion and promotion of religion.

30. In response, defendants retaliated by:

   a. Attempting to intimidate plaintiff against continuing to speak out;

   b. Coerce plaintiff into going along with the way they are done in Sutter County;

   c. Excluding plaintiff from important staff meetings;

   d. Failing to respond to plaintiff's emails and phone calls;

   e. Changing plaintiff's work assignment, caseload, and classroom locations with little or no warning, thus decreasing her ability to provide students services; and

   f. Reducing plaintiff's full-time position based on false information about numbers of special education students, thus forcing plaintiff to accept a reduction in pay or relocate to another school.

   g. Forcing her to relocate at schools with administrators hostile to plaintiff, where she was reported to be a troublemaker with the intent to force her to quit.

31. Plaintiff's objections, both verbally and in writing to defendants regarding the district's infringing on the religious beliefs of herself and the students and their families was protected under her right to free speech and religious liberty under the First Amendment to the United States Constitution.

32. YCUSD has a history of promoting Christianity and/or accommodating Christian faith based organizations and churches in violation of the California and Federal Constitutions. For many years YCUSD has given preferential treatment to groups associated with

evangelical Christian faiths in the use of public school facilities, access to student information and payments to perform events for public school students. YCUSD has a custom, pattern or practice of attempting to coerce, discourage or prevent any employee from objecting to such policy and practices.

33. Defendants attempted to restrain plaintiff's speech.

34. As a proximate result of defendants' actions against plaintiff, she has been hurt in her health, strength and activity, sustaining injury to the nervous system which has caused and continues to cause plaintiff embarrassment, humiliation, anxiety, severe emotional distress and physical and mental pain and suffering.

35. As a proximate result of defendants' actions against plaintiff, she has incurred medical and related expenses.

36. As a proximate result of defendants' conduct, plaintiff has suffered and continues to suffer losses in earnings and has suffered a loss in present and future earning capacity.

## SECOND CLAIM FOR VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

37. Plaintiff realleges the allegation set forth in paragraphs 1-36 herein.

38. Plaintiff's job includes teaching students who were the beneficiaries of Federal funding subject to Section 504 of the Rehabilitation Act and plaintiff is within the zone of interest of the Act's requirements for the benefit of her students.

39. YCUSD intentionally failed to provide plaintiff and her students adequate scheduling, equipment, facilities, or other support to properly teach, consult, coach, or supervise the instruction of special education students assigned to her.

40. Plaintiff reported incidents and situations in which her students were subjected to discrimination; not provided free and appropriate education, inadequate facilities or services;

improper employee conduct, including falsified reports or lack of required reports, and other violations of the law.  Vice Principal Acuri ordered plaintiff to obtain parental waivers for tests already performed – a violation of the law – which plaintiff refused.  Plaintiff reported this violation as well as others at various times to her supervisors, Huerta, Acuri, Guensler and Engelken.

41. In response to plaintiff reports, defendant YCUSD intentionally retaliated against her.

42. As part of its retaliation, YCUSD ignored plaintiff's emails and phone calls, excluded plaintiff from staff and other important meetings, attempted to coerce her to violate the Rehabilitation Act and other laws, resisted accommodating her visual disability, and finally, falsely informed plaintiff that due to a student shortage she would have to accept a part-time position at April Lane or transfer to a different school.

43. As a proximate result of defendant YCUSD's discriminatory and retaliatory acts described above, plaintiff is entitled to injunctive and other equitable relief, including not being compelled or coerced to violate Section 504 of the Rehabilitation Act, nor should defendant YCUSD be permitted to discharge or otherwise retaliate against plaintiff if she refuses to violate the Act or in good faith reports violations of the Act.

44. As a proximate result of defendants' actions against plaintiff, she has been hurt in her health, strength and activity, sustaining injury to the nervous system which has caused and continues to cause plaintiff embarrassment, humiliation, anxiety, severe emotional distress and physical and mental pain and suffering.

45. As a proximate result of defendants' actions against plaintiff, she has incurred medical and related expenses.

46. As a proximate result of defendants' conduct, plaintiff has suffered and continues to suffer losses in earnings and has suffered a loss in present and future earning capacity.

## PRAYER

**WHEREFORE,** plaintiff prays for judgment against defendants, and each of them, as follows:

1. For a money judgment for mental pain and anguish and emotional distress in the amount of $100,000.00;

2. For a money judgment representing compensatory damages, including past and future wages, and all other sums of money, including employment benefits, together with interest on said amounts, and any other economic injury to plaintiff in an amount that is yet to be ascertained;

3. For a money judgment representing compensatory damages for past and future medical expenses, including, psychiatric and psychological counseling, in an amount that is yet to be ascertained;

4. For costs of suit, including attorneys' fees under any applicable statutory or contractual basis;

5. For prejudgment interest under Civil Code Section 3288, Code of Civil Procedure Section 998, or any other applicable statutory or contractual basis;

6. For any other relief that is just and proper.

Dated: October 29, 2010.

TREZZA, ITHURBURN, STEIDLMAYER & ITHURBURN

By __s/s__
MICHAEL J. TREZZA
Attorney for Plaintiff
506 Second Street
Yuba City, CA 95991
Telephone: (530) 673-5637
Email: lawofficestis@sbcglobal.net

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(a), plaintiff hereby demands a jury trial.

Dated: October 29, 2010.

s/s
MICHAEL J. TREZZA