IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LISA POLONSKY-BRITT,

          Plaintiff,                    No. 2:10-cv-02951-KJM-JFM

     vs.

YUBA CITY UNIFIED SCHOOL DISTRICT,
et al.,

          Defendants.             ORDER

_____/

        Defendants filed a summary judgment motion contending among other things that plaintiff failed to establish a prima facie case of retaliation under Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq*. (ECF 41.)  The court held a hearing on this matter on October 26, 2012; James Ward appeared for defendants and Michael Trezza appeared for plaintiff.  Because plaintiff has established a prima facie case of retaliation as explained below, defendant's motion for summary judgment is DENIED.

I.       BACKGROUND AND UNDISPUTED FACTS

       A.     Procedural History

        Plaintiff, a special education teacher, filed her complaint on November 1, 2010, alleging two causes of action: 1) deprivation of constitutional rights under 42 U.S.C. § 1983; and

2) violation of § 504 of the Rehabilitation Act.  (ECF 1.)  Defendants filed a motion to dismiss the first cause of action on March 30, 2011, arguing for dismissal primarily on Eleventh Amendment grounds.  (ECF 13.)   After the parties' stipulation based on Rule 41(a)(1) and (2) of the Federal Rules of Civil Procedure this court dismissed plaintiff's first claim.  (ECF 19.)  On August 31, 2012, defendants filed the present summary judgment motion, contending in part that plaintiff failed to establish a prima facie case of retaliation under Section 504 of the Rehabilitation Act.  The court initially set the hearing for the motion on September 28, 2012. (ECF 41.)  Plaintiff filed opposition documents on September 17 and 18, three and four days past the Local Rule 230(c) deadline.  (ECF 45, 46, 48, 49, 50-66.)  Defendants filed a reply brief on September 21 (ECF 67), and on September 24 the court vacated the September 28 hearing and reset it for October 26, 2012 (ECF 68).[1]

      B.    Statutory Background

            The Rehabilitation Act of 1973 is intended in part to deter employment discrimination against individuals with disabilities.  42 U.S.C. § 701.  Title VI of the Civil Rights Act's anti-retaliation provision has been incorporated by the Rehabilitation Act, extending the Rehabilitation Act's protections to "'any individual' who has been intimidated, threatened, coerced, or discriminated against 'for the purpose of interfering with [protected rights]' under Title VI of the Civil Rights Act or the Rehabilitation Act."  *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 825 (9th Cir. 2009) (quoting *Weber v. Cranston Sch.*

---

      [1]  Defendants ask the court to disregard plaintiff's opposition to their summary judgment motion because it was filed late.  (Defs.' Reply Mem. at 1-3, ECF 67.)  Local Rule 230(c) requires that all documents opposing a motion be filed 14 days before the scheduled motion hearing date.  E.D. Cal. Local R. 230(c).  At the time plaintiff filed the opposition documents, on September 17 and 18, 2012, the hearing was to be held on September 28.  Thus, plaintiff's opposition was three to four days late because it was due on or before September 14, 2012.  Such tardiness can prejudice defendants by leaving them less time to prepare a reply before their own deadline.  While the court is sympathetic to defendants' request, it declines to disregard plaintiff's opposition in light of the resetting of the hearing. The court admonishes plaintiff to comply strictly with all court deadlines; failure in the future will result in the court disregarding late documents or sanctions or both.

*Comm.*, 212 F.3d 41, 48 (1st Cir. 2000)).  The Ninth Circuit has interpreted this to mean that a special education teacher who is not disabled but who advocates on behalf of her disabled students has standing under the Rehabilitation Act.  *Id.*  The parties agree that plaintiff has standing and that the Rehabilitation Act applies to this action.

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, is also relevant to this case.  The IDEA requires all states receiving federal education funds to provide disabled children a free and appropriate public education ("FAPE").  20 U.S.C. § 1412(a)(1)(A).  A FAPE must be tailored to each student's unique needs through an individualized education program ("IEP").  20 U.S.C. § 1401(9).  An IEP is a written statement for each disabled student that includes, for example, goals, measures of progress, and a statement of special education and supplementary aids and services the student will be provided.  20 U.S.C. § 1414(d)(1)(A)(I).  The parties agree that many of plaintiff's students were IDEA beneficiaries at all times relevant to this action.

C.    Undisputed Facts

Plaintiff has worked as a special education teacher in the Yuba City Unified School District ("YCUSD") for approximately 15 years.  (Defs.' Separate Statement of Undisputed Facts in Reply ¶ 7, ECF 67-1.)  Most of the facts relevant to this case are tied to the time periods when plaintiff taught at two schools: first at April Lane Elementary School, where she worked from approximately 2001 through the 2008-2009 school year, and then at King Avenue Elementary School during the 2009-2010 school year.  (*See id.* ¶ 8.)  At both schools, plaintiff taught students who are beneficiaries of the Rehabilitation Act.  (*Id.* ¶¶ 8-9.)  At April Lane, plaintiff contends she informed school authorities that her students were not receiving all the services as required by their IEPs under the IDEA.  (*Id.* ¶ 10.)  For example, plaintiff alleges that Vice Principal Brian Arcuri asked her to obtain post hoc waivers for modified student assessments that had already been administered.  (*Id.* ¶¶ 56-57.)  Plaintiff refused because she thought this contravened IDEA procedures.  (*Id.*)  Plaintiff contends that because she stood up

1    for her students YCUSD retaliated against her, most notably by falsely telling her that beginning

2    next academic year her position at April Lane was being reduced from full-time to eighty-

3    percent.  (*Id.* ¶ 66.)

4            At the end of the 2008-2009 school year, plaintiff was given the option to stay at

5    April Lane at eighty-percent of full time or to transfer to another school.  (ECF 67-1 ¶¶ 67, 74.)

6    Plaintiff claims hers was the only special education position in the district that was reduced.  (*Id.*

7    ¶ 68.)  The April Lane position returned to full time the following year.  (*Id.* ¶ 67.)  Defendants

8    contend that the April Lane position was reduced due to budgetary pressures.  (*Id.* ¶ 70.)

9    Ultimately, plaintiff decided to transfer, and began working at King Avenue Elementary School

10   for the 2009-2010 school year.  (*Id.* ¶¶ 79-80.)

11           At King Avenue, plaintiff was assigned a caseload of twenty-nine students.  (ECF

12   45 ¶ 10.)  Plaintiff remonstrated with Principal Tom Walters, maintaining that twenty-nine was

13   in excess of the number allowed by law.  (Defs.' Reply to Pl.'s Separate Statement of

14   Undisputed Facts at ¶ 11, ECF 67-2.)  Plaintiff also alleges she informed YCUSD administrators

15   that her students were not receiving services as required by the IDEA, in part because of

16   scheduling difficulties, and that Walters failed to provide her enough support.  (ECF 67-1 ¶¶ 93-

17   94; ECF 45 ¶ 12.)  Plaintiff maintains that defendants' retaliation and lack of support resulted in

18   her taking a medical leave of absence from King Avenue on October 7, 2009.  (*Id.* ¶ 93.)  This

19   leave resulted in lost wages and medical bills.  (ECF 45 ¶¶ 11-12.)

20           Plaintiff returned from medical leave in March 2010.  (ECF 67-1 ¶ 107.)  Rather

21   than return to King Avenue, she worked at Tierra Buena Elementary School and at the district

22   office for the remainder of the school year.  (*Id.*)  She was then assigned to Lincrest Elementary

23   for the 2010-2011 school year.  (*Id.* ¶ 112.)  Plaintiff claims that retaliation continued at Lincrest,

24   because, among other things, administrators did not accommodate her visual disability.  The

25   undisputed record, however, shows that Lincrest allowed her to choose a classroom with the

26   /////

1  most natural light and had special lights and light covers installed, and plaintiff did not alert

2  administrators thereafter that she continued to have problems with her vision.  (*Id.* ¶¶ 117-124.)

3       Plaintiff names the YCUSD, Angela Huerta (Principal at April Lane), Brian

4  Arcuri, Craig Guensler (YCUSD Assistant Superintendent of Human Resources) and Elizabeth

5  Engleken (Director of Student Support Services) as defendants.  (Compl. ¶¶ 2-6.)

6  II.     SUMMARY JUDGMENT STANDARD

7       A court will grant summary judgment "if . . . there is no genuine dispute as to any

8  material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

9  The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

10  resolved only by a finder of fact because they may reasonably be resolved in favor of either

11  party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

12       The moving party bears the initial burden of showing the district court "that there

13  is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477

14  U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party, who "must establish that

15  there is a genuine issue of material fact . . . ."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

16  475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to particular parts

17  of materials in the record . . .; or show [] that the materials cited do not establish the absence or

18  presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

19  support the fact."  FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the

20  nonmoving party] must do more than simply show that there is some metaphysical doubt as to

21  the material facts").  Moreover, "the requirement is that there be no *genuine* issue of *material*

22  fact . . . .  Only disputes over facts that might affect the outcome of the suit under the governing

23  law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 247-48

24  (emphasis in original).

25       In deciding a motion for summary judgment, the court draws all inferences and

26  views all evidence in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at

587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

III.    ANALYSIS

        The *McDonnell Douglas* test provides the standard for claims of retaliation under the Rehabilitation Act.  *Hodge v. Oakland Unified Sch. Dist.*, No. C 09-04719 RS, 2012 WL 1933678, at *8 (N.D. Cal. May 29, 2012) (citing *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1121 (9th Cir. 2000),*vacated on other grounds sub nom*, *U.S. Airways v. Barnett*, 535 U.S. 391 (2002). To prove a prima facie case, plaintiff must show: "1) she engaged in protected activity; 2) she was thereafter subjected to an adverse employment action; and 3) a causal link between the protected activity and the adverse employment action."  *Id.*  If plaintiff establishes a prima facie case, the burden of production shifts to defendants to show a "legitimate non-retaliatory" reason for taking the adverse employment action.  *Barnett*, 228 F.3d at 1121 (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987)).  If defendants meet that burden, plaintiff must then raise a genuine issue of material fact suggesting that defendants' "legitimate non-retaliatory" reason is pretextual.  *Id.*

        A.    Plaintiff Demonstrates She Engaged in Protected Activity

        Advocating for disabled students on issues related to their federal and state educational rights is a protected activity.  *Hodge*, 2012 WL 1933678, at *8 (citing *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009)); *Sweet v. Tigard-Tualatin Sch. Dist.,* 124 F. App'x 482, 485 n.1 (9th Cir. 2005).  To survive summary judgment, plaintiff need not prove that the school district in fact violated the IDEA; a genuine dispute about whether plaintiff was advocating for students based upon potential IDEA violations is sufficient to satisfy this first prong.  *See Sweet*, 124 F. App'x at 485 (holding that a public school psychologist's

/////

1   complaints regarding potential IDEA violations are protected activities under the Rehabilitation

2   Act).

3           Plaintiff contends in her opposition brief that her advocacy for her disabled

4   students' educational rights constitutes protected activity.  (ECF 41 at 4.)  Plaintiff avers that she

5   advocated for her students by resisting defendants' illegal actions in two ways, which the court

6   restates here in the form best supported by the record.[2]  First, at April Lane, plaintiff refused to

7   obtain illegal post hoc parental consent for modified student assessments.  (*Id.*)  Nowhere in her

8   opposition or other submitted materials does plaintiff provide the applicable laws and describe

9   how defendants potentially violated them, however.  Second, at King Avenue, she informed her

10  superiors that not all students were receiving the educational services required by law and

11  requested assistance to remedy this.  (*Id.*)

12          Defendants respond that plaintiff, in her opposition, offers only bare conclusions

13  without evidentiary support.  (Defs.' Mot. Summ. J. at 6, ECF 67.)  Some of plaintiff's

14  contentions – that she was a "forceful advocate for special needs children" and that she is "one

15  of the few teachers who will challenge administrators" – also are not supported in plaintiff's

16  separate statement of undisputed facts, defendants note.  (*Id.*)  Because plaintiff has not produced

17  admissible evidence that she engaged in any protected activity, defendants argue, this prong is

18  not satisfied.

19          While plaintiff's failure to cite to the record even once in her opposition brief is a

20  glaring flaw, plaintiff's separate statements of undisputed facts and her response to defendants'

21  separate statement of facts, taken together, establish evidence sufficient to satisfy this prong.

22  Plaintiff's first factual contention is that she refused to obtain illegal *post hoc* waivers for

23  modified student assessments.  (ECF 41 at 4.)  In her deposition, plaintiff testified that Mr.

24  Arcuri asked her to obtain waivers for modified student assessments that had already been

25  _____

26      [2] Plaintiff enumerates many other instances and types of protected activity in her
    complaint and reply but does not offer evidentiary support for them.

1   conducted; she believed this contrary to IDEA procedures and explains why in some detail.

2   (Pl.'s Resp. to Defs.' Separate Statement of Undisputed Facts ¶ 61, ECF 49 (citing Decl. Michael

3   J. Trezza, Ex. A, Pl.'s Dep. at 205-07, ECF 51).)  Defendants correctly note that several of

4   plaintiff's deposition materials that purportedly support her contention are not included in the

5   record; specifically, pages 204, 211, 217 and 219 of plaintiff's Exhibit A are missing.  (Defs.'

6   Separate Statement of Undisputed Facts in Reply ¶ 61, ECF 67-1.)  Defendants also correctly

7   contend that plaintiff speculates that Mr. Arcuri was hostile towards her because of her refusal to

8   obtain the waivers.  (ECF 67-1 ¶ 61.)  However, plaintiff has provided sufficient admissible

9   evidence to support a claim that she refused to violate the IDEA.[3]

10                  Plaintiff's second factual contention is that plaintiff informed her superiors that

11   not all students were receiving the educational services required by law and requested assistance

12   in vain.  This contention is partly supported by plaintiff's deposition statement that she had a

13   caseload of twenty-nine and could not provide all the services required in students' IEPs due to

14   scheduling difficulties.  (Pl.'s Separate Statement of Undisputed Facts ¶ 10, ECF 45 (citing Decl.

15   Michael J. Trezza, Ex. D, Pl.'s Dep. at 57:3-25, 58:1-15, ECF 57).)  Plaintiff's statement does

16   not provide enough context to support her contention that a caseload of twenty-nine is in excess

17   of the legal limit, but it does support the contention that plaintiff believed she could not comply

18   with students' IEPs and that she communicated this to the school.  Plaintiff's contention is

19   further supported by Maria Ringo Endemano, a fellow special education teacher, who testified at

20   deposition that plaintiff and other special education teachers communicated their educational

21   /////

22   /////

23

24

---

25        [3] Many of defendants' hearsay objections are meritless because an opposing party's
     statement is not considered hearsay.  Fed. R. Evid. 801(d)(2).  Mr. Arcuri, for example, is a
26   named defendant in this action.

1  concerns to Mr. Walters on several occasions but he was not receptive or supportive.[4]  (*Id.* ¶ 11

2  (citing Decl. Michael J. Trezza, Ex. I, Dep. of Maria Ringo Endemano at 20, 34, 40, ECF 66).)

3          Plaintiff has established genuine issues of material fact regarding her participation

4  in two protected activities: 1) her objection to obtaining illegal *post hoc* parental consent for

5  modified student assessments; and 2) informing her superiors that not all students were receiving

6  the educational services required by law.  The first prong of the *McDonnell Douglas* test is

7  therefore satisfied.

8          2.      Plaintiff Demonstrates She Suffered An Adverse Employment Action

9          An adverse employment action is any adverse treatment that is "reasonably likely

10  to deter" plaintiff from engaging in protected activity.  *Hodge*, 2012 WL 1933678, at *8 (citing

11  *Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir. 2000)).  The Ninth Circuit, in accord with

12  the First, Seventh, Tenth, Eleventh and D.C. Circuits, takes an expansive view of the types of

13  school district employment actions that qualify as adverse.  *Ray*, 217 F.3d at 1241.  Thus,

14  transfers to another job of the same pay and status, or changes in job duties, can constitute an

15  adverse employment action.  *Id.*  Additionally, undeserved performance ratings and unfavorable

16  job references satisfy this prong.  *Id.* (quoting *Hashimoto v. Dalton*, 118 F.3d 671, 676 (9th Cir.

17  1997)).

18              a.  Forced Transfer

19          Plaintiff argues that defendants retaliated against her with several adverse

20  employment actions, including, but not limited to, a forced transfer to another school, a forced

21  medical leave, damage to her reputation and employment prospects, and by not accommodating

22  her visual disability.  (ECF 48 at 4-5.)  First, plaintiff alleges that defendants retaliated against

23  her by effectively forcing her to transfer schools.  (ECF 45 ¶ 7 (citing Decl. Michael J. Trezza,

24

25          [4] In adopting only these admissible interpretations of plaintiff's undisputed facts, the
26  court has noted and sustained several of defendants' evidentiary and other objections, including
   objections stated in their reply to plaintiff's undisputed facts.  (ECF 67-2 ¶ 10.)

1    Ex. G, Dep. Craig Guensler at 94:14-21, ECF 63).)  Plaintiff was forced to transfer when

2    defendants gave her two choices: remain at April Lane and work 80 percent of full time (a

3    demotion from full time), or move to another school.  (*Id.*)  Defendants counter that their

4    deposition of Mr. Guensler demonstrates that plaintiff was given more than just two choices.

5    (ECF 67-2 ¶ 8 (citing Decl. Daniel Jay, Ex. D., Dep. Craig Guensler at 65:19-67:21, ECF 41-3).)

6    In the face of Mr. Guensler's testimony, the court construes the evidence in the light most

7    favorable to plaintiff, the nonmoving party.  *Matsushita*, 475 U.S. at 587-88.  On summary

8    judgment, therefore, plaintiff has established a material dispute as to whether she was forced to

9    transfer or accept a decrease in hours.

10                    b.  Medical Leave

11        Plaintiff next contends that defendants' pattern of retaliation caused her stress and

12    health problems resulting in plaintiff's taking a medical leave of absence.  (ECF 48 at 5.)

13    Plaintiff cites to her deposition testimony, in which she states she took a leave because she felt

14    she lacked support and believed she had an unlawfully-large caseload.  (ECF 45 ¶ 12 (citing

15    Decl. Michael J. Trezza, Ex. D, Pl.'s Dep. at 57:3-25, 58:1-15, ECF 57).)  But this statement

16    alone does not establish, as defendants note, that defendants forced her to take this leave.[5]  (ECF

17    67-2 ¶ 12.)  Plaintiff avers in her opposition memo that she was forced to take a medical leave

18    because she was given an excessive caseload, because King Avenue principal Mr. Walters was

19    non-responsive to her requests for additional aides and scheduling changes, and because she was

20    requested to attend numerous meetings that had nothing to do with her job.  (ECF 48 at 3.)  The

21    stress became so unbearable that plaintiff "took a medical leave of absence" in October 2009.

22    (*Id.*)  Plaintiff provides no references to the record, nor has she pointed to any evidence such as

23    testimony of her doctor or medical records to support her claim.  Even assuming her allegations

24

---

25        [5] In her separate statement of undisputed facts, plaintiff directs the court to her own
deposition, but in an exhibit that is not contained in the record, so the court cannot consider it.
26    (ECF 45 ¶ 13 (citing Decl. Michael J. Trezza, ex. J, P.'s Dep., No ECF).)

are true, plaintiff fails to demonstrate how her medical leave was "forced."  Plaintiff does not cite a single case for the proposition that an employer can be so unsupportive that an employee's voluntary decision to take a medical leave of absence is "forced" and therefore qualify as an adverse employment action.

Plaintiff's remaining alleged adverse employment actions – damage to her reputation and employment prospects, and, at Lincrest Elementary, that administrators warned her that some teachers had concerns about her, the assistant principal micromanaged her work, and she was served a notice of unprofessional conduct – are also unsupported in her opposition and accompanying materials.  (ECF 48 at 3-5.)  Defendants have carried their burden in their opposition memo by pointing to "an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In sum, plaintiff has demonstrated a genuine issue of material fact only as to whether she suffered an adverse employment action in the form of a forced transfer.  The second prong of *McDonnell Douglas* is satisfied in this way.

3.  Causal Link Between Protected Activity and Adverse Employment Action

Causation may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the temporal proximity between the protected activity and the alleged retaliation.  *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).  The connection in time must be "very close," however, and an intervening period of more than a few months does not support a causation inference.  *Hodge*, 2012 WL 1933678, at *8 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (discussing the Circuits' consensus that a three or four month gap is too long)).  A one-month gap between the protected activity and the employer's adverse action is "well within time frames" the Ninth Circuit has found sufficient to infer a discriminatory motive.  *Sweet*, 124 F. App'x at 485 (quoting *Ulrich v. City and Cnty. of San Francisco,* 308 F.3d 968, 980 (9th Cir. 2002)).

/////

1    The court need only consider the two claims of protected activity and one claim

2  of retaliation for which plaintiff has demonstrated a genuine issue of material fact.  Therefore,

3  the court's inquiry under this prong is whether plaintiff has shown a temporal connection

4  between her protected activities of 1) objecting to obtaining illegal *post hoc* parental consent for

5  modified student assessments and 2) informing her superiors that not all students were receiving

6  the educational services required by law, and her adverse employment action of the forced

7  transfer, such that causation can be inferred.

8    Although plaintiff's opposition does not demonstrate the necessary causal

9  connection between plaintiff's protected activities and the District's adverse employment actions

10  (*see* ECF 48 at 5), defendants' counsel conceded at hearing that the temporal proximity between

11  plaintiff's objection to obtaining the post-hoc waivers and her forced transfer is sufficiently close

12  to establish causation.  The record shows that plaintiff's forced transfer occurred at the end of the

13  2008-2009 school year.  (ECF 67-1 ¶¶ 67, 74.)  Defendants' counsel stated that the test waivers

14  to which plaintiff objected occurred at the end the 2008-2009 school year as well, and before

15  plaintiff was informed of her transfer options.  Because the two events cannot be separated by

16  more than one or two months, the court finds this is sufficient evidence from which causation

17  can be inferred.  *Sweet*, 124 F. App'x at 485.

18    Plaintiff's second protected activity, however, of informing King Lane

19  administration that not all students were receiving the educational services required by law,

20  necessarily occurred after plaintiff had already suffered the only adverse employment action that

21  can remain in this action, that is her transfer to King Lane.  The court finds there is no genuine of

22  disputed fact with respect to retaliation for that protected activity.

23    Because there is sufficient evidence that plaintiff's objections to the post hoc test

24  waivers proximately caused defendants to retaliate against plaintiff by forcing her to transfer or

25  accept a reduction in hours, a prima facie case of retaliation is established.

26  /////

4.      Legitimate Non-Retaliatory Reason for Adverse Employment Action

Once plaintiff has established a prima facie case, the burden of production shifts to defendants to articulate a legitimate, non-retaliatory reason for forcing plaintiff to transfer schools. *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1121 (9th Cir. 2000).  The stated reason need not be objectively correct.  *Sweet*, 124 F. App'x at 486 (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) ("[I]t is not important whether [the employer's reasons] were objectively false . . . .)).  Defendants assert that plaintiff's forced transfer was due to YCUSD budgetary constraints.  (ECF 41 at 20; *see also* ECF 67-1 ¶ 70.)  The court finds defendants' reason sufficient to meet its burden: budgetary constraints are legitimate and non-retaliatory.

Finally, the burden shifts back to plaintiff to establish a genuine issue of material fact as to whether defendants' non-retaliatory reason for forcing her to transfer is pretextual. *Barnett*, 228 F.3d at 1121.  To establish a genuine issue of material fact as to pretext, plaintiff must demonstrate either that defendants' proffered non-retaliatory reason is unworthy of credence or that retaliation is the more likely motivation.  *See Villiarimo,* 281 F.3d at 1062 (describing this step in the context of employment discrimination).  Here, plaintiff has established a genuine issue of material fact by showing that her position at April Lane returned to full-time the year after she left, and by submitting evidence contradicting defendants' statement that the reduction in the April Lane position was due to a decline in special education student enrollment.  (ECF 67-1 ¶¶ 67, 69.)  These facts are sufficient to support a reasonable inference that defendants reduced the April Lane position simply to oust plaintiff.

Defendants contend plaintiff was offered a chance to stay at April Lane at eighty-percent and to make up the twenty-percent elsewhere, which would tend to show that the position's reduction was not retaliatory.  Under such an arrangement, plaintiff would still be working at April Lane most of the time.  (ECF 67-1 at 75.)  However, plaintiff disputes that she was ever actually offered this eighty/twenty option, and Mr. Guensler's testimony on what

13

1    options plaintiff was actually given is not only conflicting but vague.  (*Compare* ECF 45 ¶ 7 *and*

2    ECF 67-2 ¶ 8.)  Plaintiff has established that defendants' purported non-retaliatory reason for

3    forcing her to transfer is potentially pretextual and thus has met her burden in responding to

4    summary judgment in this respect.

5    IV.    CONCLUSION

6             For the foregoing reasons, defendants' motion for summary judgment on

7    plaintiff's Rehabilitation Act retaliation claim is DENIED.

8             IT IS SO ORDERED.

9    DATED:  November 15, 2012.

                                            _____
                                            UNITED STATES DISTRICT JUDGE